J-S44025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTINE NAZARIO | : | |
| | : | |
| Appellant | : | No. 3495 EDA 2017 |

Appeal from the Judgment of Sentence May 23, 2017
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0001513-2016

BEFORE: LAZARUS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.: **FILED AUGUST 17, 2018**

Christine Nazario (Appellant) appeals from the judgment of sentence imposed after a jury convicted her of three counts of endangering the welfare of a child (EWOC), three counts of conspiracy to commit EWOC, and a summary count of harassment.[1] We affirm on the basis of the trial court opinion.

The child victims in this case are Appellant's three biological sons.[2] At sentencing, the trial court stated:

> This was repeated physical, verbal, emotional and physical and
> spiritual abuse against [the] children that was sustained; it was

---

[1] 18 Pa.C.S.A. §§ 18 Pa.C.S.A. §§ 4304, 903, 2709.

[2] Rafael Olivo, who is Appellant's husband and the children's stepfather, was also charged and convicted of the above crimes, as well as three counts of simple assault related to his abuse of the children. He and Appellant were tried jointly, and his separate appeal is before this Court at *Commonwealth v. Olivo*, 2854 EDA 2017.

pervasive and occurred over a significant period of time. I mean this was the poster case for physical abuse of children. And unfortunately it's not the only poster case but it doesn't come anywhere close to punishment that went astray.

N.T., 5/23/17, at 45-46. The trial court described some of the abuse:

And I'm not going to go through everything but my characterization of this is as follows; that it was repeated physical and verbal abuse over a significant period of time that involved multiple beatings by two adults of three children who were in their care. The children were hit with hands open and closed, with any item that was at hand including belts, mops, slippers, etc. On one occasion one of the children was hit and couldn't open his jaw without it hurting for a week and a half.

A dog was beaten in front of the children in part to show them they must be submissive.

Both [Appellant and her husband] smoked marijuana in the house . . . and in front of the children; and significantly, the children were told . . . that if they were questioned about the bruises that these beatings resulted in they were to lie or it would get worse.

That's just a quick summary; it doesn't even capture all of the testimony.

*Id.* at 47.

As noted, Appellant was tried jointly with the children's stepfather, Rafael Olivo. The trial was held from February 8 – 10, 2017. At the conclusion of trial on February 10, 2017, the jury convicted Appellant of the aforementioned crimes. On May 23, 2017, the trial court sentenced Appellant to 60 to 120 months of incarceration, plus 90 days for the summary harassment conviction, followed by three years of probation. On June 2, 2017, Appellant filed a post-sentence motion for reconsideration of sentence. The trial court convened a hearing on the motion on August 1, 2017. It denied

the motion on October 2, 2017. Appellant filed this timely appeal. Both Appellant and the trial court have complied with Appellate Rule of Procedure 1925.

Appellant presents eight issues:

1. At trial, whether the lower court erred when it allowed the Commonwealth to amend the Information on the first day of trial to add a new theory of criminal liability?

2. At trial, whether the lower court erred when it allowed a child-victim to testify about drug use when the victim lacked personal knowledge of narcotics and where the narcotics were not alleged as a basis of criminal liability prior to the first day of trial and the amendment of the information?

3. At trial, whether the lower court erred when it allowed the Commonwealth to ask leading questions of the child-victims?

4. At trial, whether the lower court erred when it allowed Trooper Brian Borowicz to testify to a video-taped statement in contravention to the Hearsay Rule, the Best Evidence Rule, and the Tender Years statute?

5. At trial, whether the lower court erred when, on basis of a hearsay objection, it prohibited the defense from cross-examining Trooper Brian Borowicz on statements by the father of the child-victims regarding his improper motives in this case?

6. At trial, whether the lower court erred when it admitted a Facebook post about physical abuse without proper authentication?

7. At trial and in disposing of post-sentence motions, whether the lower court erred when it determined that there was sufficient evidence for multiple charges of Conspiracy, rather than a single count of Conspiracy?

8. In disposing of post-sentence motions, whether the lower court erred when it determined that the Appellant's three charges for Endangering the Welfare of a Child and three charges for

Conspiracy do not merge into a single charge of Endangering and a single charge for Conspiracy for sentencing purposes?

Appellant's Brief at 7-8.[3]

In her first issue, Appellant claims that on the first day of trial, the trial court improperly permitted the Commonwealth to amend the criminal information at the six EWOC and conspiracy counts to add that Appellant engaged in activity that would be criminal conduct in front of the children by smoking marijuana and using other drugs. We note that "[i]f there is no showing of prejudice, amendment of an information to add an additional charge is proper even on the day of trial." *Commonwealth v. Sinclair*, 897 A.2d 1218, 1224 (Pa. Super. 2006) (citation omitted). Here, the amendment did not add new charges or change the description or grading of the charges; nor did it add facts previously unknown to Appellant. The trial court thus concluded that the amendment did not result in undue prejudice or unfair surprise to Appellant. *See id.* at 1221 ("the purpose of [Criminal Procedure] Rule 564 [allowing amendment of an information] is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed.").

With regard to Appellant's multiple evidentiary claims, we recognize:

The standard of review governing evidentiary issues is settled. The decision to admit or exclude evidence is committed to the trial

---

[3] The Commonwealth has not filed a reply brief.

court's sound discretion, and evidentiary rulings will only be reversed upon a showing that a court abused that discretion. A finding of abuse of discretion may not be made "merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." **Commonwealth v. Laird**, 605 Pa. 137, 988 A.2d 618, 636 (2010) (citation and quotation marks omitted); **see also Commonwealth v. Sanchez**, 614 Pa. 1, 36 A.3d 24, 48 (2011). Matters within the trial court's discretion are reviewed on appeal under a deferential standard, and any such rulings or determinations will not be disturbed short of a finding that the trial court "committed a clear abuse of discretion or an error of law controlling the outcome of the case." **Commonwealth v. Chambers**, 602 Pa. 224, 980 A.2d 35, 50 (2009) (jury instructions)[ .]

**Commonwealth v. Koch**, 106 A.3d 705, 710–11 (Pa. 2014).

We note that in her sixth issue, Appellant claims that a Facebook post of her co-defendant, Mr. Olivo, was improperly admitted at trial. This Court recently – after Appellant took this appeal – issued a decision which provides further support for the trial court's admission of the post in this case, stating:

[S]ocial media records and communications can be properly authenticated within the existing framework of Pa.R.E. 901 and Pennsylvania case law, similar to the manner in which text messages and instant messages can be authenticated. Initially, authentication social media evidence is to be evaluated on a case-by-case basis to determine whether or not there has been an adequate foundational showing of its relevance and authenticity. **See In re F.P.**, 878 A.2d at 96. Additionally, the proponent of social media evidence must present direct or circumstantial evidence that tends to corroborate the identity of the author of the communication in question, such as testimony from the person who sent or received the communication, or contextual clues in the communication tending to reveal the identity of the sender.

**Commonwealth v. Mangel**, 181 A.3d 1154, 1162 (Pa. Super. 2018).

Finally, with regard to Appellant's seventh and eighth arguments contesting the three charges each of EWOC and conspiracy, including Appellant's merger argument, we highlight a statement from the Commonwealth when it addressed Appellant's merger argument at sentencing. The Commonwealth accurately responded that the three children, "all had different instances of abuse from [Appellant] throughout years. To sit here and say to the Court that a parent can beat three different children over the course of years and come before you and only be held accountable for one crime . . . is absurd." N.T., 5/23/17, at 10.

In sum, having reviewed Appellant's brief, the record, and prevailing law, we conclude that there was no error or abuse of discretion in this case. Further, the Honorable Jonathan Mark, sitting as the trial court, has authored a comprehensive and well-reasoned opinion addressing each of Appellant's issues. Accordingly, we adopt Judge Mark's Rule 1925(a) opinion as our own in affirming Appellant's judgment of sentence. Because we have adopted the trial court's opinion, we direct the parties to include it in all future filings relating to the merits of this appeal.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 8/17/2018*

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA  :
                              :    NO. 1513 CRIMINAL 2016
            v.                :
                              :    APPEAL DOCKET NO.
CHRISTINE NAZARIO,            :    2495 EDA 2017
        Defendant            :

## OPINION IN SUPPORT OF ORDER PURSUANT TO Pa. R.A.P. 1925(a)

On October 2, 2017, we issued an order denying Defendant's post sentence motions. The order provided a bullet summary of the reasons for denial and stated that an opinion would follow. Before the opinion was issued, Defendant filed this appeal. As a result, we issued an order directing the Defendant to file a statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b) and held off filing this opinion so that we could at once state the reasons for our order and address issues raised by Defendant. Subsequently, Defendant filed a Rule 1925(b) statement.[1] We now file this opinion in accordance with Pa.R.A.P. 1925(a) and our Order.

## BACKGROUND

Defendant was arrested and charged with committing three counts each of Endangering the Welfare of a Child (EWOC), Conspiracy to commit EWOC, Simple Assault, and Harassment against her children, RPG, RJG, and ARG. The charges stem from incidents in which Defendant physically and emotionally abused the

_____

[1] In her notice of appeal, Defendant purports to appeal from *both* the judgment of sentence *and* the order denying his post sentence motions. However, in a criminal context, an appeal properly lies from the judgment of sentence. *See Commonwealth v. Dreves*, 839 A.2d 1122, 1125 n.1 (Pa. Super. 2003) (*en banc*) (in a criminal action, appeal properly lies from the judgment of sentence made final by the denial of a post-sentence motion).

1

children, was violent toward them, and endangered them. The children's stepfather, Rafael Ray Olivo, was charged with committing the same four crimes against the children. The cases were consolidated by the Commonwealth.

A joint trial commenced on February 8 and concluded on February 10, 2017. The Commonwealth called six witnesses, including the children, all of whom testified in open court, the arresting trooper, and the forensic examiner who spoke with the children at the local Child Advocacy Center (CAC) after the abuse came to light. The Children's stepfather did not present any evidence. Defendant called two witnesses, Chaia Nazario and Jeremy Nazario. At the conclusion of the trial, the jury convicted Defendant of committing EWOC, Conspiracy to commit EWOC, and Harassment against RPG, and EWOC and Conspiracy to Commit EWOC against RJG and ARG.[2]

After the verdict was accepted, we entered an order scheduling a sentencing hearing. Subsequently, Defendant filed "Pre-Sentencing Motions" asking us to impose a single sentence for the three EWOC convictions and a single sentence for the three Conspiracy convictions based on her assertion that imposition of multiple sentences for each crime is barred by merger and Double Jeopardy principles. In addition, Defendant asked that we grade the EWOC and Conspiracy charges as misdemeanors of the first degree and not felonies. (Defendant's Pre-Sentencing Motion, filed March 10, 2017).

Defendant's motions were argued and denied during the sentencing hearing before sentence was imposed. (N.T., 5/23/2017, pp. 6-14). At the conclusion of the

---

[2] Co-defendant, Rafael Olivo, was convicted of perpetrating all four crimes charged against RPG and RJG and of committing EWOC and Conspiracy to Commit EWOC against ARG. Like Defendant, Olivo has filed an appeal. Olivo's case is docketed in this Court to No. 1511 CRIMINAL 2016. His appeal is docketed in the Superior Court to No. 2854 EDA 2017. On November 13, 2017, we issued an opinion pursuant to Pa. R.A.P. 1925(a) in response to the appeal filed by Olivo. We incorporate that appeal opinion into this opinion by reference.

2

hearing, we sentenced Defendant to an aggregate period of incarceration of not less than 60 months nor more than 120 months, plus 90 days on the summary Harassment conviction, to be followed by a consecutive three-year period of probation.

After sentence was imposed, Defendant filed post sentence motions. Defendant's filing included a motion to find merger and a motion to bar multiple sentences on double jeopardy grounds through which she reiterated her contention that only one sentence for the EWOC convictions and one sentence for the Conspiracy convictions may be imposed. Defendant also restated her position that the EWOC and Conspiracy charges should be graded as misdemeanors and not felonies. Finally, Defendant argued that there was insufficient evidence to sustain the convictions. Subsequently, Defendant withdrew her offense grading claim. (Order dated October 2, 2017; Defendant's brief, filed July 12, 2017, p. 1 (unnumbered); N.T., August 1, 2017, p. 7).

On October 2, 2017, we issued an order denying Defendant's post sentence motions. The order stated:

> **AND NOW**, this 2nd day of October, 2017, upon consideration of Defendant's Post-Sentence Motion, the briefs and arguments of counsel, the record and file in this case, the evidence presented during trial, and the applicable law, it is **ORDERED** that the Motion is **DENIED**. Opinion to follow.
> In broad summary: 1) Defendant's Merger Statue and Double Jeopardy arguments lack merit; 2) the Commonwealth presented sufficient evidence to support the verdict; and 3) Defendant withdrew her claim regarding grading of the Endangering the Welfare of a Child convictions

Defendant filed this appeal before an opinion was issued.

3

## DISCUSSION

Using the shotgun approach, Defendant raises eight assignments of error, all of which are phrased as questions:

1. At trial, whether the Trial Court abused its discretion and erred as a matter of law when it allowed the Commonwealth to amend the information on the first day of trial to add a new theory of criminal liability?

2. At trial, whether the Trial Court abused its discretion and erred as a matter of law when it allowed a child-victim to testify about drug use when the victim lacked personal knowledge of narcotics and where the narcotics were not alleged as basis of criminal liability prior to the first day of trial and the amendment of the information?

3. At trial, whether the Trial Court abused its discretion and erred as a matter of law when it allowed the Commonwealth to ask leading questions of the child-victims?

4. At trial, whether the Trial Court abused its discretion and erred as a matter of law when it allowed Trooper Brian Borowicz to testify to a video-taped statement in contravention to a proper application of the Hearsay Rule, the Best Evidence Rule, and the Tender Years statute?

5. At trial, whether the Trial Court abused its discretion and erred as a matter of law when, on the basis of a Hearsay Objection, it prohibited the defense from cross-examining Trooper Brian Borowicz on statements by father of the child-victims regarding his improper motives in this case?

6. At trial, whether the Trial Court abused its discretion and erred as a matter of law when it admitted a Facebook post about physical abuse without proper authentication?

7. At trial and in disposing of post-sentence motions, whether the Trial Court abused its discretion and erred as a matter of law when it determined that there was sufficient evidence for multiple charges of Conspiracy, rather than a single count of Conspiracy?

4

8.      In disposing of post-sentence motions, whether the Trial Court abused its discretion and erred a matter of law when it determined that the Appellant's three charges for Endangering the Welfare of a Child and three charges for Conspiracy do not merge into a single charge of Endangering and a single charge for Conspiracy for sentencing purposes?

(Defendant's Rule 1925(b) Statement, filed November 16, 2017, ¶2 (1) – (8)). The three issues raised on post sentence motions are encompassed in assignments of error seven and eight. For the reasons that follow, all assignments of error and all issues raised in post sentence motions lack merit.

1.      Amendment of the Information Was Proper

In her first assignment of error, Defendant asserts that that we erred by granting the Commonwealth's motion to amend the Information. We disagree.

The version of Rule 564 of the Rules of Criminal Procedure, entitled Amendment of Information, which was in effect when Defendant was arrested and at time of trial provided:

> The court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa. R.Crim. P. 564.[3] The purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition

---

[3] Rule 564 was amended on December 21, 2016. The amendment became effective December 21, 2017. The current version of Rule 564 reads: "The court may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of

5

of alleged criminal acts of which the defendant is uninformed. *Commonwealth v. Mentzer*, 18 A.3d 1200 (Pa. Super. 2011); *Commonwealth v. Sinclair*, 897 A.2d 1218 (Pa. Super. 2006); *Commonwealth v. Duda*, 831 A.2d 728, 732 (Pa. Super. 2003). "[O]ur courts apply the rule with an eye toward its underlying purposes and with a commitment to do justice rather than be bound by a literal or narrow reading of the procedural rules." *Commonwealth v. Grekis*, 601 A.2d 1284, 1288 (Pa. Super. 1992).

In *Mentzer*, the Superior Court set forth the considerations for determining whether amendment should be permitted.

> [W]hen presented with a question concerning the propriety of an amendment, we consider:

>> [w]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

> *Sinclair*, 897 A.2d at 1221 (quoting *Commonwealth v. Davalos*, 779 A.2d 1190, 1194 (Pa. Super. 2001), *appeal denied*, 567 Pa. 756, 790 A.2d 1013 (2001) (citation omitted)). Additionally,

>> [i]n reviewing a grant to amend an information, the Court will look to whether the appellant was fully apprised of the factual scenario which supports the charges against him. Where the crimes specified in the original information involved the same basic

---

justice." Pa. R.Crim.P. 564. The Comment advises that the Rule "was amended in 2016 to more accurately reflect the interpretation of this rule that has developed since it first was adopted in 1974. " *Id., Comment.*

6

elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results.

*Id.* at 1222. Further, the factors which the trial court must consider in determining whether an amendment is prejudicial are:

(1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

*Id.* (citation omitted).... 'The mere possibility amendment of information may result in a more severe penalty ... is not, of itself, prejudice.' *Commonwealth v. Picchianti*, 410 Pa.Super. 563, 600 A.2d 597, 599 (1991), *appeal denied*, 530 Pa. 660, 609 A.2d 168 (1992).

*Mentzer*, 18 A.3d at 1202–03. *See also Commonwealth v. Beck*, 78 A.3d 656, 660 (Pa. Super. 2013); *Commonwealth v. J.F.*, 800 A.2d 942, 945 (Pa. Super. 2002), *appeal denied*, 812 A.2d 1228 (Pa. 2002); *Grekis, supra*. Accordingly, "[i]f there is no showing of prejudice, amendment of an information to add an additional charge is proper even on the day of trial." *Sinclair*, 897 A.2d at 1224. *See also Commonwealth v. Roser*, 914 A.2d 447, 455 (Pa. Super. 2006) (allowing amendment after the defendant testified just prior to closing arguments); *Commonwealth v. Womack*, 453 A.2d 642, 645 (Pa. Super. 1982) (If there is no showing of prejudice, amendment of an

7

information to add an additional charge is proper even on the day of trial); *Commonwealth v. Page*, 965 A.2d 1212, 1224 (Pa. Super. 2009).

In this case, we did not find prejudice at the time of trial. On review prompted by this appeal, we remain convinced that there was no prejudice and that our decision to allow amendment was proper.

The challenged amendment was made to the EWOC and Conspiracy counts. As originally pled in the information, the three EWOC counts each charged that Defendant "did strike, hit, punch, push, and/or use other violence on victims: R.P.G., A.R.G., and R.J.G." Similarly, the three Conspiracy counts each charged that defendant "did participate in, encourage, not discourage, and/or watched as either Rafael Olivo or Defendant did strike, hit, punch, push, and/or use other violence on victims: R.P.G., A.R.G., and R.J.G." (Information, filed August 17, 2016). On the first day of trial, the Commonwealth asked to amend all six counts to add that Olivo and Defendant engaged in activity that would be criminal conduct in front of the children. The conduct alleged to be criminal was smoking marijuana and using other drugs and Olivo shooting the oldest child with a BB gun. In making its motion, the Commonwealth asserted that both defendants and their attorneys were aware of the drug use and gun from the beginning of the case. Defense counsel countered that the amendment constituted trial by ambush. They also argued that the amendment changed the theory of the case. After hearing the arguments of counsel we allowed amendment, indicating that we did not perceive any undue prejudice or unfair surprise. (N.T., 02/08/2017, p. 11 – 19. *See also* pp. 2-11).

8

In more expanded terms, after considering the law recited above, we allowed amendment for several reasons. Initially, the amendment neither added new charges nor changed the description or grading of the charges. Similarly, the amendment did not add new facts previously unknown to Defendant or her attorney. The facts on which amendment was based were known and available to both Defendant and Olivo from the beginning of the case. Drug use in front of the children was specifically mentioned in the Affidavit of Probable Cause, drug use and Olivo's shooting the oldest child with a BB gun were included in statements made by the children and were brought out through testimony at the preliminary hearing, and both matters were brought up by the children during their Children's Advocacy Center (CAC) interviews. Defendant's attorney and counsel for Olivo had transcripts of the preliminary hearing as well as copies of the children's statements and CAC interviews. Relatedly, while the amendment added new verbiage to the information, it did not change the factual scenario supporting the charges. In succinct terms, the scenario on which the charges were based is that, over an extended period of time, Defendant and Olivo, individually and together, verbally, emotionally, and physically abused and endangered the children in a variety of ways, including but not limited to hitting and beating them with belts, slippers, aerosol cans, and fists – anything that came to hand. Despite defense posturing, Defendant and Olivo's smoking marijuana and using drugs in front of and while caring for the children and Olivo's shooting one child with a BB gun were not novel or additional theories of criminal liability; rather, the conduct added by amendment was from the beginning cited by both the children and the Commonwealth as but two of the many examples of the type and nature of abuse and endangerment

that Defendant and Olivo perpetrated on the children. Accordingly, the amendment did not and should not have either surprised Defendant or changed her defense strategy. Finally, considering all of these facts, factors, and circumstances, we did not believe that amendment prejudiced Defendant (or Olivo) even though it occurred immediately prior to the evidentiary portion of the trial. We stand by our analysis.

2.    R.P.G. was Properly Allowed to Testify About Drug Use.

In her second assignment of error, Defendant argues that we erred and abused our discretion by allowing R.P.G. to testify about drug use because: 1) R.P.G. "lacked personal knowledge of narcotics;" and 2) "narcotics were not alleged as basis of criminal liability prior to the first day of trial and the amendment of the information." Neither aspect of this assignment of error holds water.

The second assignment of error stems from an objection to R.P.G.'s testimony, elicited by the Commonwealth, about his mother's drug use that occurred in front of, and while she was responsible for the care of, R.P.G. and his siblings. In explaining how his Mother had abused him and his siblings over time, RPG testified that his mother "was abusive. She abused drugs. She had hit me and my brothers; so did he [Olivo]." (N.T., 02/08/2017, p. 71). The Commonwealth then asked questions to flesh out the types of abuse, beginning with asking R.P.G. what he meant by his statement that his mother "abused drugs." In his responses, R.P.G. stated that his mother abused drugs, mainly marijuana but also other drugs the names and types of which he did not know, and that he saw her use marijuana in front of himself and his siblings on several occasions. (*Id.* at 71-74). Several questions into this line of inquiry, counsel for Defendant objected. After an on-record side-bar conference, in which Defendant's

10

attorney summarily argued that the testimony was irrelevant and not based on personal knowledge, we overruled the objection. (*Id.* at 71-73). RPG went on to briefly testify that his mother would use marijuana in front of himself and his siblings. When asked by the Commonwealth how he knew it was marijuana she was smoking and not a cigarette, R.P.G. stated that the substance had a brown wrapping and that his mother was less alert and more drifty after smoking it. (*Id.* at 74).

On cross-examination, Counsel for defendant questioned R.P.G. regarding his testimony about his mother's drug use. Among other things, Defendant's attorney elicited testimony, as he had previously argued at sidebar, that the other drugs taken could have been prescribed medication, although R.P.G. noted that in his experience packaging for doctor-prescribed medication was different. (N.T., 02/08/2017, p. 72, 96).

Given these facts and the timing of the objection at trial, we do not believe that Defendant has properly preserved this evidentiary challenge. The objection was not made when the Commonwealth first asked R.P.G. questions about his statement that his mother "abused drugs." Instead, the objection was not lodged until four questions into that line of inquiry. Since the objection was not made at the earliest possible moment, we believe the issue has been waived.

In the alternative, Defendant's two-part evidentiary challenge is substantively without merit. In this regard, the second aspect of this assignment of error does nothing more than reiterate Defendant's challenge to amendment of the information. That challenge is baseless for the reasons discussed above.

The first aspect of this assignment of error, which alleges that R.P.G. lacked personal knowledge of narcotics, is equally unavailing. At time of trial, R.P.G. was fourteen and his testimonial competency was not challenged. Given the context, facts, and circumstances of this case, the elements of the crimes charged, and the other evidence presented during the trial, testimony regarding Defendant's drug use was clearly relevant. Such testimony related directly to all charges that were presented to the jury. This is especially true given the amendment that we permitted. In addition, the testimony provided background and context for the substantial evidence of abuse, endangerment, harassment, and neglect that was presented. Further, despite Defendant's bald, self-serving assertion to the contrary, R.P.G. had the requisite personal knowledge regarding the subject matter of his testimony (Pa.R.E. 602). He personally witnessed Defendant smoke marijuana and consume drugs, was able to describe the color of the drugs his mother was using, the way the drugs were packaged, and his mother's behavior and conduct after she smoked or ingested the drugs. (N.T., 02/08/2017, p. 71-4, 96). Finally, this issue, as raised by Defendant at trial and as reiterated on appeal goes to the weight of the testimony and not its admissibility.

Simply, Defendant waived this issue. In the alternative, allowing R.P.G. to testify about Defendant's drug use was neither an error nor an abuse of discretion.

3. Allowing Some Leading Questions to Be Asked of Child Victims in a Child Abuse Prosecution was Proper

In his third assignment of error, Defendant makes a bald, general claim that we erred by allowing the Commonwealth "to ask leading questions of the child victims." This is another issue that has been waived. Alternatively, the issue lacks merit.

12

Defendant's third assignment of is devoid of any specifics that would allow this Court to meaningfully address, or the Superior Court to meaningfully review, her challenge. Despite the fact that the trial transcript was distributed prior to sentencing and more than seven months before Defendant's Rule 1925(b) statement was filed, Defendant did not specify which of the children she believes were improperly led on direct or re-direct, did not provide page references, did not point to or otherwise meaningfully attempt to identify the questions, answers, and subject matter she believes were objectionable, and did not cite to any objections made by her attorney. It is simply not this Court's obligation to provide the specificity and record references needed for appellate review. Defendant has waived this assignment of error.

Similarly, and importantly, Defendant did not even attempt to allege that she was prejudiced by the use of leading questions, or that the method of questioning led to introduction of evidence that would not otherwise have been admitted or admissible. Absent a claim of prejudice, even if there was some error in the mode of questioning, we do not believe that relief would be warranted.

Alternatively, allowing the Commonwealth to ask child-witnesses some leading questions in this criminal case involving child abuse was not error.

Pa.R.E. Rule 611(c) sets forth the general rule that leading questions are not permitted on direct or re-direct examination except as needed to develop a witness's testimony. At the same time, Rule 611(a) gives trial courts broad discretion to regulate the manner in which witnesses are examined. This discretion includes controlling the use of leading questions at trial. *Commonwealth v. Bell*, 476 A.2d 439 (Pa. Super. 1984). "The law in this area is clear. The allowance of leading questions lies within the

13

discretion of the trial court and a court's tolerance or intolerance of leading questions will not be reversed absent an abuse of discretion." *Katz v. St. Mary Hospital*, 816 A.25 1125 (Pa. Super. 2003) (quoting *Commonwealth v. Johnson,* 541 A.2d 332 (Pa. Super., 1988). Stated another way, the rules on leading questions "are liberally construed in modern practice, with a large measure of discretion in the court to permit parties to elicit any material truth without regard to the technical consideration of who called the witness." *Bell v. City of Philadelphia*, 491 A.2d 1386, 1389 (Pa. Super. 1985).

The general rule that leading questions are not permitted on direct or redirect examination is subject to a variety of "tolerances" or "expections." In this regard, leading questions are routinely permitted with respect to witnesses, such as children, the elderly, and persons with mental health issues, who have difficulty understanding or responding to non-leading questions. As to children, they are easily intimidated by the courtroom setting, and a trial judge should display a tolerance for direct, succinct, and even leading questions. *See, Commonwealth v. Willis*, 552 A.2d 682 n. 3 (Pa. Super. 1988), *allocatur denied*, 559 A.2d 527 (Pa. 1989) (children should be asked direct rather than convoluted or compound questions during examination). *See also Commonwealth v. Polston*, 616 A.2d 669, 678 (Pa. Super. 1992).

In this case, Defendant complains only generally about an unspecified number of leading questions being asked in open court in a criminal trial of child witnesses who were the victims of physical, mental, and emotional abuse by their mother and stepfather. Under the cited cases and rules that have developed over time, we believe

14

that our tolerance of leading questions being asked of the child victim-witnesses was eminently proper.

As noted, Defendant has not identified which of the children were asked leading questions or cited to any specific question, objection, or answer. It is not our job to identify the testimony that forms the basis of Defendant's claims. Nonetheless, we have briefly reviewed the record and have found only a limited number of instances where a "leading question" objection was made during the testimony of the three children. None of the elicited responses is of such a character that the information would not have come into evidence but for the leading format. Further, given the nature of the charges, the children's ages and status as victims, the open courtroom setting, the fact that their parents are the defendants, and the other facts and circumstances discussed above, we do not believe that overruling any of the limited number of objections to which Defendant might now point constituted an abuse of discretion or led to Defendant being prejudiced in any way. See *Commonwealth v. Ragan*, 743 A.2d 390, 404 (Pa. 1999) ("evaluating the prejudicial effect of leading questions depends upon the substance of, circumstances surrounding, and responses to the questions as well as the "atmosphere of trial").

In short, Defendant has waived this issue. In the alternative, Defendant has failed to allege prejudice, and further, her evidentiary challenge is baseless.

4.  Allowing Prior Consistent Statements of Child Victims in a Criminal Case Arising from Child Abuse Was Proper

In her fourth assignment of error, Defendant argues that we erred and abused our discretion by allowing the investigating state trooper to testify to video-taped

15

statements made by the children in contravention of the Hearsay Rule, the Best Evidence Rule, and the Tender Years status. This, too, is baseless.

It is firmly established that,

> "[q]uestions concerning the admissibility of evidence lie within the sound discretion of the trial court, and [a reviewing court] will not reverse the court's decision on such a question absent a clear abuse of discretion." *Commonwealth v. Chmiel*, 558 Pa. 478, 493, 738 A.2d 406, 414 (1999), *cert. denied*, 528 U.S. 1131, 120 S.Ct. 970, 145 L.Ed.2d 841 (2000). An abuse of discretion requires:

> > not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

> *Commonwealth v. Widmer*, 560 Pa. 308, 322, 744 A.2d 745, 753 (2000) (citation omitted).

*Commonwealth v. Hunzer*, 868 A.2d 498, 510 (Pa. Super. 2005), *appeal denied*, 880 A.2d 1237 (Pa. 2005). In this case, we neither erred nor abused our discretion in allowing the challenged testimony.

Initially, the testimony of Trooper Borowicz was admissible as prior consistent statements of the children. The law with regard to whether a trial court may properly admit prior consistent statements of a child victim is well-settled.

> To the extent that prior consistent statements are offered to prove the truth of the matter asserted therein, they are plainly inadmissible hearsay. However, when they are offered to corroborate in-court testimony, prior consistent statements are not hearsay.

> \* \* \*

> The general rule precluding corroboration of unimpeached testimony with prior consistent statements is subject to

16

exceptions when particular circumstances in individual cases tip the relevance/prejudice balance in favor of admission. Among the common examples of such exceptions are prior consistent statements which constitute prompt complaints of sexual assault.... Evidence of a prompt complaint of sexual assault is considered specially relevant because (rightly or not) a jury might question an allegation that such an assault occurred in absence of such evidence.

\* \* \*

Prior consistent statements may also be considered specially relevant when the witness' status alone is such that his or her testimony may be called into question even in the absence of express impeachment.

\* \* \*

Similarly, jurors are likely to suspect that unimpeached testimony of child witnesses in general, and child victims of sexual assaults in particular, may be distorted by fantasy, exaggeration, suggestion, or decay of the original memory of the event. Prior consistent statements may therefore be admitted to corroborate even unimpeached testimony of child witnesses, at the trial court's discretion, because such statements were made at a time when the memory was fresher and there was less opportunity for the child witness to be effected by the decaying impact of time and suggestion.

\* \* \*

The principle exception to the general rule of exclusion is that prior consistent statements may be admitted to corroborate or rehabilitate the testimony of a witness who has been impeached, expressly or impliedly, as having a faulty memory, or as having been induced to fabricate the testimony by improper motive or influence. Admission of prior consistent statements on such grounds is a matter left to the sound discretion of the trial court, to be decided in light of the character and degree of impeachment. It is not necessary that the impeachment be direct; it may be implied, inferred, or insinuated either by cross-examination, presentation of conflicting evidence, or a combination of the two.

17

*Hunzer,* 868 A.2d at 512 (quoting *Commonwealth v. Willis,* 552 A.2d 682, 691–692 (1988) (citations omitted in original). In this case, the children were physically rather than sexually assaulted. However, the evidentiary bases for allowing prior consistent statements of child victims is the same.

Furthermore, all three children testified at trial and remained available to Defendant, if she needed or desired to call them, on her side of the case. The law cited above and the fact that the children testified obviates Defendant's Hearsay (including Tender Years hearsay) and Best Evidence Rule arguments. The children testified, first-hand, about the physical, emotional, mental, and verbal abuse perpetrated upon them by Defendant and Olivo. Given the history and circumstances of this case, the consistency in the children's statements, the ages of the children, and the fact that the children were the victims, there is no question that their testimony was at once reliable and the best evidence of the abuse. The challenge testimony of Trooper Borowicz merely brought in prior consistent statements which, under the law summarized above, were clearly admissible.

Finally, as with her leading questions challenge, Defendant did not allege prejudice. That is in all likelihood because there is none. Again the testimony merely brought in unquestionably admissible prior consistent statements. The statements were clearly relevant. As to prejudice, there was no surprise. The children have been consistent in their statements since the abuse was disclosed, their trial testimony was consistent with their pre-trial statements, and as noted, Defendant and her attorney have been aware and have had copies of the children's prior statements for the entirety of this case. Further, references to the children's prior video-recorded

18

statements were brief in number and general in nature. There simply was no prejudice. To the extent any prejudice is perceived, the probative value far outweighed any prejudicial effect.

5. <u>The Court Properly Sustained the Commonwealth's Objection to Defense Counsel's Question and, In Any Event, Defendant's Attorney Later Elicited the Testimony and Information He Wanted to Elict.</u>

In her fifth assignment of error, Defendant argues that we erred and abused our discretion by prohibiting defense counsel from cross examining the investigating state trooper "on statements by the father of the child-victims regarding his improper motives." Again, there was no error and no prejudice.

During cross examination of Trooper Borowicz, Defendant's attorney asked: "And when you interviewed [the children's father] he indicated to you that he wanted to take over custody of the children?" The assistant district attorney interjected a hearsay objection. An on-record sidebar ensued. After hearing from all attorneys, the objection was sustained. (N.T., 02/08/2017, pp. 228-30). This evidentiary ruling apparently forms the basis for Defendant's challenge.

Prompted by this appeal, we have again reviewed the question and Trooper Borowics' testimony. We believe the objection was properly sustained. The question clearly called for hearsay. It also called for irrelevant evidence. This is not a case with a child custody overlay. Prior to the abuse coming to light, the children lived with Defendant for years. No custody contest or proceeding was referenced. The children's father did not obtain custody until after the allegations of abuse were made.

19

In any event, there was no prejudice. Through her next query, Defendant's attorney asked the question again in another way and, in the absence of another objection, received a response from Trooper Borowics:

Q: Trooper you - - when talking to the children you heard them say that dad wants custody of them, Correct? Yes or no."

A: Those words no.

Q: Okay, well when you say it in that manner, is there something else that heard that is related to that?

A: I heard that their dad is willing to take them in open arms just like every other loving dad.

(N.T., 02/08/2017, p. 230). Thus, although the witness may not have given the answer counsel hoped for, Counsel for Defendant was able to ask the question and elicit the response he sought. Accordingly, there was no prejudice.[4]

6.      Allowing Introduction of the Facebook Post Was Not Error

In her sixth assignment of error, Defendant alleges that we erred and abused our discretion by allowing the Commonwealth to introduce a Facebook post without proper authentication. This claim likewise lacks merit.

Again, admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. *Hunzer, supra.* Generally, the requirement of authentication or identification as a condition precedent to the admissibility of evidence is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Pa. R.E. 901(a). With regard to "the admissibility of electronic communication, such messages are to be evaluated on a case-by-case basis as any other document to determine

---

[4] In this regard, we note that defense counsel did not follow-up or expand on this line of inquiry.

20

whether or not there has been an adequate foundational showing of their relevance and authenticity." *In the Interest of F.P.*, 878 A.2d 91, 96 (Pa. Super. 2005). "[A]uthentication of electronic communications, like documents, requires more than mere confirmation that the number or address belonged to a particular person. Circumstantial evidence, which tends to corroborate the identity of the sender, is required." *Commonwealth v. Koch*, 39 A.3d 996, 1005 (Pa. Super. 2011).

In this case, we allowed introduction of the Facebook post because there was enough direct and circumstantial evidence to allow it. First, the Facebook post was shared by Rafael Olivo on his own Facebook wall. (*See* Commonwealth Exhibit 1). Second, the post discussed and depicted the practice of performing "Cocotasos" – the act of hitting a child hard on the head with knuckles – for the purpose of "[s]haping Hispanic kids for a better tomorrow...." (*Id.*). Prior to the introduction, there had been testimony that Olivo, who is Hispanic, gave the children, who are also Hispanic, "Cocotasos." Third, the Commonwealth offered the Facebook page through a defense witness, Chaia Nazario, who clearly authenticated and established a foundation for the exhibit:

> Q: [Assistant District Attorney]  Now I'm handing you what's been marked as Commonwealth's Exhibit 1.
>
> A: [Chaia Nazario] Okay.
>
> Q: That's a Facebook page, correct?
>
> A: Yes.
>
> Q: And whose Facebook page is of that?
>
> ******
> A: It's Rafael Olivos.

21

Q: Okay, and is there a post that is on that Facebook page?

A: Yes.

Q: And it stated what?

A: Cocotasos, shaping Hispanic kids for a better tomorrow.

******

Q: But Rafael posts a post on Facebook about giving children cocotasos, correct?

******

Q: Is that correct?

A: That he put that on there? Obviously yes ma'am.

(N.T., 02/09/2017, pp. 34-36).

Simply, there was more than enough authenticated the Facebook post. We did not err or abuse our discretion by admitting the post into evidence.

7.    There Was Sufficient Evidence to Support the Conspiracy Convictions and We Properly Determined That the Three EWOC Counts and the Three Conspiracy Counts Did Not Merge

In her post sentence motions, Defendant alleged that because each of the three EWOC counts and each of the three Conspiracy counts reference all three children, the EWOC charges merge under Pennsylvania's Merger statue, 42 Pa. C.S.A. § 9765, and the Double Jeopardy Clause. In her brief in support of post sentence motions, Defendant added a claim that there was insufficient evidence to support multiple Conspiracy convictions because there was only one multi-victim "overarching conspiracy." In her final two assignments of error, Defendant reiterated her merger argument as to both EWOC and Conspiracy and repeats her contention that there was

22

insufficient evidence to support multiple Conspiracy convictions.[5] For the reasons discussed below, Defendant misinterprets the law. Accordingly, her final two assignments of error, like the post sentence motions which preceded them, do not hold water.[6]

Section 9765 of the Judicial Code, entitled Merger of Sentence, provides:

### § 9765. Merger of sentence

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa. C.S.A. § 9765. "The statute's mandate is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all the statutory elements of one offense are included in the statutory elements of the other." *Commonwealth v. Baldwin*, 985 A.2d 830, 833 (Pa. 2009). *See also Commonwealth v Calhoun*, 52 A.3d 281, 285 (Pa. Super. 2012) (Section 9765, particularly as elucidated by our Supreme Court in *Baldwin*, evinces a clear intent to confine merger for sentencing purposes to the defined condition that all the statutory elements of one of the offenses are included in the statuary elements of the other). Our merger jurisprudence is

rooted in the protection against double jeopardy provided by the United States and the Pennsylvania Constitutions. *See Baldwin*, supra at 836; see also U.S. Const. Amend. V

---

[5] She did not, however, repeat her Double Jeopardy claim.

[6] Defendant's post sentence motions and her final two assignments of error also mirror, or at least track with, the "Pre-Sentencing Motions" she filed. Those motions were argued and denied before sentence was imposed. (N.T., 5/23/2017, pp. 2-13). We briefly summarized our reasons for the denial on the record. (Id. at 13). We incorporate our on-record statements into this opinion by reference.

> ("nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb"); Pennsylvania Const. Art. 1, § 10 ("No person shall, for the same offense, be twice put in jeopardy of life or limb"). However, our Supreme Court has long recognized that 'the same facts may support multiple convictions and separate sentences for each conviction included offenses.' *Commonwealth v Anderson*, 538 Pa. 574, 650 A.2d 20, 22 (1994). The Court in *Anderson* notes its continuing concern to avoid giving criminals a 'volume discount' on crime. *Id.*

*Calhoun*, 52 A.3d at 284-85 (footnote omitted).

In this case, Defendant's last two assignments of error may be discussed together. Defendant attempts to argue that, because the crimes charged arose from what she characterizes as a single act or single set of facts, the elements of each of the EWOC counts are the same, the elements of the three Conspiracy counts are the same, and each count of each charge references all three children, merger is required for sentencing purposes and the Commonwealth has failed to prove more than one Conspiracy. However, what Defendant has fails to fully confront is that the crimes did not arise from a single incident or involve only one victim. Rather, the crimes arise from a series of incidents that occurred over an extended period of time and, nothwithstanding the language or structure of the counts in the information, involved three victims who, of course, are Defendant's children. In addition, our Supreme Court long ago rejected the single act theory of merger. *See Commonwealth v Frisbie*, 485 A.2d 1098 (Pa. 1984). *See also Commonwealth v Yates*, 562 A.2d 908 (Pa. Super. 1989) (citing cases)(analyzing *Frisbie* in the context of a sentencing merger claim). Further, despite Defendant's protestations to the contrary, it is now well settled that multiple convictions may be sustained, multiple sentences are permitted, and merger does not apply where, as here, multiple victims are endangered, injuried, or impacted

24

by a single criminal act. *Fisbie*; *Yates*. Along similar lines, our appellate courts have in no uncertain terms stated that there will be no "volume discount" on crime. *See Commonwealth v. Anderson*, 650 A.2d 20 (Pa. 1994); *Calhoun, supra*; *Yates, supra*.

In this case, the language and structure of the information notwithstanding, it was clear from the beginning to the end that there were three victims, each of whom was individually abused by Defendant and Olivo, that the Commonwealth intended to charge Defendant and Olivo with committing and conspiring to commit EWOC against each child, and that the case would be presented to the jury in this matter. It was also clear that there was not a single criminal act, incident, or episode, but, rather, a series of separate incidents of abuse that occurred over time. In their pre-trial statements, each child outlined more than one instance of abuse that he suffered and detailed abuse suffered by his siblings. Similarly, during trial, each child testified about multiple acts of abuse perpetrated on him, as well as his brothers, by Defendant and Olivo over time. The following passage, written by this Court in response to a challenge to the sufficiency of the evidence raised by Olivo in this separate appeal, summarizes the children's testimony regarding the number of incidents, the nature and severity of the abuse, and the time period over which the multiple acts occurred.

> As noted, all three of the children testified in open court and were cross-examined. Each child provided background information and testified about verbal and physical abuse and assaults he suffered at the hands of Defendant. Each child also testified about abuse and assaults perpetrated by Defendant on the child's siblings. The children, who knew the difference between being spanked for punishment and being abused, explained that at times they were hit as frequently as five to six times a week.
> In summary, the testimony of the children established that, over an extended period of time,

25

Defendant verbally, emotionally, and physically abused the children, hitting and beating them with belts, slippers, aerosol cans, and fists – anything that came to hand. This included, but was by no means limited to, Defendant giving the children "cocotasos" – hitting them on the head with his knuckles. At times, the children sustained bruises, cuts, or scrapes. They often experienced pain. On one occasion, Defendant shot the oldest child with a pellet or BB gun. On another occasion the oldest child was hit so hard he could not open his jaw for several days. On yet another occasion, the middle child had the wind knocked out of him when Defendant punched him in the chest. In addition, Defendant called the children names and swore at them. Further, Defendant stood by while his wife, the children's mother, abused and assaulted them. Sometimes, Defendant and the children's mother were abusive toward the children together. On top of the physical, emotional, and verbal abuse, Defendant abused the family dog in the children's presence and, along with their mother, smoked marijuana in front of the children. For the most part, the abuse and assault perpetrated on the children by Defendant (and their mother) happened in the home. The children were threatened and told there would be dire consequences if they told anyone about the abuse.

(Appeal Opinion, *Commonwealth v Olivo*, No. 1511 CRIMINAL 2016, 2854 EDA 2017, filed November 13, 2017, pp. 8-9). By way of additional illustration, and not limitation: R.P.G. testified about Defendant pushing him to the ground and striking him with a broom on one occasion and with her fists while wearing rings on another occasion; R.J.G. testified that, while in the presence of Defendant, Olivo hit him in the chest with a fist so hard he "couldn't breathe" and "felt dizzy" and Defendant did nothing other than to bring R.J.G. a glass of water afterwards; and A.R.G. testified about both Defendant and Olivo hitting him with a belt so hard it left marks. (N.T. 02/08/2017, pp. 80-82, 137-138, 162). Finally, with the input of all counsel, including Defendant's attorney, the verdict slip was structured to reflect and the final charge was given with the understanding that there were three victims and that Defendant was charged with

26

committing each crime listed against each child. (See Verdict Slip, filed February 10, 2017; N.T., 2/9/2017 (A), pp. 9-11, 12-19, 25-30, 32; N.T., 2/9/2017, (B), pp. 84-86; N.T., 5/23/2017, p.13).[7]

Simply, this is not a single act case. Rather, it is a multiple act case involving three victims. Under the law cited above, there was ample evidence to support the three Conspiracy convictions and sentencing merger does not apply. Cut to the quick, Defendant is asking for a three-for-one volume discount. Her request is not only legally untenable, but, given the facts and her relationship to the children, repugnant.

For these reasons, several appeal issues have been waived and, in any event, all eight assignments of error are devoid of merit. Accordingly, we believe that the judgment of sentence should be affirmed.

**BY THE COURT:**

DATE: 1/29/2018

CF Clerk of Courts
JAN 30 '18 AM 8:58

_____
JONATHAN MARK, J.

Cc:  Superior Court of Pennsylvania
     Jonathan Mark, J
     Julieane Fry, Esq., Office of the District Attorney
     Eric Closs, Esq., Office of the Public Defender

---

[7] Due to a change in court reporters, there are two transcripts from February 9, 2017, the second day of trial. The first transcript, prepared by Danielle Henshue, RPR and filed of record on March 31, 2017, will be referred to and cited as "N.T., 2/9/2017 (A)," and the second transcript, prepared by Cheryl Peters, Court Reporter and filed on April 7, 2017, will be cited as "N.T., 2/9/2017 (B)."

27